UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD G. CONVERTINO,

    Plaintiff,

v.                                          Case Number: 07-CV-13842

UNITED STATES DEPARTMENT OF JUSTICE,

    Defendant.
                                                /

**OPINION AND ORDER DENYING PLAINTIFF'S "MOTION FOR AN ORDER TO SHOW CAUSE . . ." AND DIRECTING NON-PARTY RESPONDENT TO REAPPEAR FOR A DEPOSITION**

    While the central lawsuit remains pending in the District of Columbia, this court is again called upon to address discovery issues, as detailed in Plaintiff's current "Motion for an Order to Show Cause Why [Non-Party Respondent] David Ashenfelter Should Not Be Held in Contempt." The issues have been fully briefed and the court held a hearing on February 11, 2009. The court will deny Plaintiff's motion and require Ashenfelter to reappear for a deposition.

## I. BACKGROUND

    On August 28, 2008, the court granted in part Plaintiff's "Motion to Compel Production from Non-Party Reporter David Ashenfelter and Non-Party Corporation Detroit Free Press." (8/28/08 Order at 22.) Specifically, the court granted the motion to compel with respect to Ashenfelter and denied it as to Detroit Free Press. (*Id.*) After an initial misstep, a deposition was scheduled for December 8, 2008, which Ashenfelter attended. (Pl.'s Show Cause Mot. at 4.) At the deposition Ashenfelter refused to

answer all but approximately four questions.[1]  In response to all other questions, Ashenfelter responded "same basis," which counsel for Plaintiff and Ashenfelter stipulated to mean:

> On advice of counsel I decline to answer that question asserting my reporter's privilege under the First Amendment of the U.S. Constitution and Article 1, Section 5 of the Michigan Constitution, federal common law and any other relevant federal or state statute, rule or case law protecting or creating a reporter's or news gatherer's privilege.  I also assert my rights under the Fifth Amendment of the U.S. Constitution as well as Article 1, Section 17 of the Michigan Constitution and where relevant I will add the attorney/client privilege and work product document.

(*Id.*, Ex. 4 at p. 9-10.)  Plaintiff now seeks to have this court require Ashenfelter to show cause why he should not be held in contempt for his refusal to answer Plaintiff's deposition questions.  (*Id.* at 1.)  Ashenfelter, in turn, claims his answers are protected under the rights enumerated in his stipulated deposition answer.  (Ashenfelter's Resp. at 1.)

## II.  STANDARD

### A.  Contempt of Court

The decision to hold a person in civil contempt is within this court's sound discretion.  *NEFT, LLC v. Border States Energy, LLC*, 340 F.3d 373, 378 (6th Cir. 2003).  Indeed, in the realm of subpoenas, the court possesses the power to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  Fed. R. Civ. P. 45(e); *United States v. Conces*, 507 F.3d 1028, 1041(6th Cir. 2007).  When contempt is sought via motion, the movant "must prove by clear and

---

[1] Ashenfelter disclosed his name (Pl.'s Show Cause Mot., Ex. 4, at p. 6) and answered three questions asking him whether particular words were contained in exhibits presented to him (*Id.*, Ex. 4 at pp. 28, 31, 35).

convincing evidence that the party to be held in contempt violated a court order." *Conces*, 507 F.3d at 1042. Further, the court order in question must be "definite and specific" with any "ambiguities . . . resolved in favor of [the] persons charged with contempt." *Id.* (internal quotations omitted). Here, Ashenfelter does not dispute that a properly served, definite subpoena existed which unambiguously required him to respond, to the best of his ability, to Plaintiff's deposition questions. Nor does Ashenfelter contend he responded to Plaintiff's questions. Ashenfelter argues that he has, in effect, an "adequate excuse," Fed. R. Civ. P. 45(e), that justifies his non-response. He points to the Fifth Amendment of the United States Constitution and argues that the answers compelled by this court would violate his right against self-incrimination.[2] (Ashenfelter's Resp. at 6.)

### B. Fifth Amendment Right Against Self-Incrimination

The Fifth Amendment allows a witness in a civil matter to refuse to answer questions when to do so would involve substantial risk of self-incrimination. *United States v. U.S. Currency*, 626 F.2d 11, 14 (6th Cir. 1980); *see also W.J. Usery v. Brandel*, 87 F.R.D. 670, 682 (W.D. Mich. 1980). Any refusal to answer, however, must be a valid assertion of rights under the Fifth Amendment and it is for the court to decide whether a witness's silence is justified. *Morganroth v. Donovan*, 718 F.2d 161, 167 (6th Cir. 1983). A witness's mere declaration that he might incriminate himself is not enough

---

[2] Ashenfelter's stipulated basis for refusing to answer Plaintiff's deposition questions included reference to the First Amendment of the U.S. Constitution, a reporter's privilege, and the Michigan Constitution. Ashenfelter does not raise these as grounds in his response now, nor would their inclusion have served much purpose, as these arguments were considered and found unavailing by the court in considering Plaintiff's original motion to compel. (8/28/08 Order.)

to justify a failure to answer, *Hoffman v. United States*, 341 U.S. 479, 486 (1951), as it remains the role of the court to consider "the implications of the question, in the setting in which it is asked," *id.* at 486-87, and to employ the judge's "personal perception of the peculiarities of the case [as much as] the facts actually in evidence," *id.* at 487, to determine the legitimacy of the witness's position. The witness must provide "an explanation of why [a question] cannot be answered." *Id.*

A witness's refusal to answer may be upheld where the witness has "reasonable cause to apprehend a real danger of incrimination." *Id.* Critically, this danger must be real, and not a "fanciful possibility of incrimination." *U.S. Currency*, 626 F.2d at 14; *Morganroth*, 718 F.2d at 167. The court should not weigh the *probability* of prosecution in considering the assertion of the privilege though, but should instead examine the *possibility* of prosecution. *W.J. Usery*, 87 F.R.D. at 683 ("[A]s long as prosecution is possible . . . [the witness] has such reasonable cause [to assert the Fifth Amendment.]"); *see also In re: Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution does not depend upon the Likelihood, but upon the Possibility of prosecution.") (internal quotation omitted); *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1228 (S.D.N.Y. 1980) ("The absence, however, of a pending or likely prosecution does not rule out a finding that the privilege asserted is well-founded."). Indeed, the probability of prosecution is typically irrelevant in examining the privilege, unless a legal bar, such as the expiration of the statute of limitations or a grant of immunity, would prevent any criminal prosecution. *W.J. Usery*, 87 F.R.D. at 683; *In Re: Folding Carton*, 609 F.2d at 872. Where, however, a question calls for an answer that would not subject one to

even a possibility of prosecution, there is no reasonable cause to sustain the Fifth Amendment privilege, and the court will require the witness to answer. *Hoffman*, 341 U.S. at 486.

In some instances, the risk of incrimination inherent in a question may be patent. "[I]f an answer to a question, on its face, calls for the admission of a crime," *Morganroth*, 718 F.2d at 167, "a witness bears no further burden of establishing a reasonable cause to fear prosecution." *Id.* The same is true where "questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed." *Id.*; *Hoffman*, 341 U.S. at 487. There is a third category of questions, however, in which the answer to the question is not patently incriminating and the court is without sufficient facts to determine the danger of incrimination. *Morganroth*, 718 F.2d at 168 ("Whether a witness risks a 'real danger' of prosecution from questions which appear on their face to call for only innocent answers and where the incriminating nature of the answer is not evident from the implications of the question in the setting in which it is asked, is a difficult question left unanswered by *Hoffman*."). In this third category, the witness need not prove, in a traditional sense, the "hazard of incrimination." *Id.* But the witness must present sufficient evidence such that the "court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution." *Id.* Above all, it is the witness's claim of the Fifth Amendment which controls, and therefore it is the witness who "must supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of

prosecution." *Id.* "Argument may be supplied by counsel but not the facts necessary for the court's determination." *Id.* at 170.

### III. DISCUSSION

To date, Ashenfelter has not personally provided any statements under oath, or any other evidence, so as to allow the court to either validate or reject his asserted fear of prosecution.[3] As detailed in *Hoffman* and analyzed in *Morganroth*, there are only two scenarios where such a dearth of personal testimony can suffice to support a claim of Fifth Amendment rights. The first occurs when "an answer to a question, on its face, calls for the admission of a crime." *Morganroth*, 718 F.2d at 167. On review of the deposition testimony, the court finds no question proposed to Ashenfelter that patently called for self-incrimination.[4] Indeed, a great many of the deposition questions objected to were entirely innocuous, and most others presented nothing more than a "fanciful possibility of incrimination." *U.S. Currency*, 626 F.2d at 14. For instance,

> Q. Do you understand that there's – an order was issued by United States district court judge compelling you to provide deposition answers – or answer my questions today about – concerning the leak of information that related to Mr. Convertino?
> A. Same basis.

---

[3] Ashenfelter's counsel has filed a response brief and provided oral argument, but Ashenfelter has not himself testified before the court, nor has he provided any sworn statement. The court agrees with Plaintiff's contention that "[Ashenfelter] didn't even attempt to break down all the questions that were asked and provide a justification on a question-by-question basis," (Transcript of February 11, 2009 Hearing at 6-7), either before or during the February 11 hearing.

[4] Nor is this court tasked with "scan[ning] all of the law for a possible connection between a question and a criminal offense." *Morganroth*, 718 F.2d at 169 n.3. To find otherwise would force this court into a "guessing game in which the witness is the final judge of the claim of privilege." *Id.* (citing *Tennesco, Inc. v. Berger*, 240 S.E.2d 586 (Ga. Ct. App. 1977)).

>   Q. And when I mention Mr. Convertino, do you understand that to be Mr. Richard Convertino, a former prosecutor in the Detroit U.S. attorney's office?
>   A. Same basis.
>   Q. You understand you're required to tell the truth today?
>   A. Same basis.

(Pl.'s Show Cause Mot., Ex. 4 at p. 20-21.)  Asking a witness whether he understands his obligation to speak truthfully under oath can in no way be construed to present a patent risk of incrimination.  To object is frivolous.  The deposition transcript is rife with similar occurrences.[5]

There is a second scenario where Ashenfelter might be absolved of providing further support of his claimed privilege, where "questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed." *Morganroth*, 718 F.2d at 167; *Hoffman*, 341 U.S. at 487.  The "concrete information," *Morganroth*, 718 F.2d at 168, available to the court as "other facts" is currently quite limited.  What can be gleaned from the briefing and the February 11, 2009 hearing is that there is no active criminal investigation into any of the alleged actors in this civil matter.  No party has suggested a grand jury has been convened, nor has Ashenfelter provided information that he has been threatened with, or even contacted regarding, a criminal prosecution.[6]  Ashenfelter's counsel, on brief and at the February 11 hearing,

---

[5] When asked if he would like to add anything at the conclusion of the deposition, Ashenfelter responded with the familiar "[s]ame basis." (Pl.'s Show Cause Mot., Ex. 4 at p. 42.)  Asked if he in fact feared any prosecution, Ashenfelter responded "[s]ame basis." (*Id.*, Ex. 4 at p. 13.)  When asked if he would read a particular subpoena aloud in the deposition, Ashenfelter responded "[s]ame basis." (*Id.*)  These are only a small sample of the many questionable invocations of the Fifth Amendment during the short deposition.

[6] The court does not imply that the listed items *must* be present for a "danger of prosecution" to be evident.  They are, rather, a genus of "other facts" that might lend credence – "concrete evidence" – to a witness's claim of Fifth Amendment protection.

7

has ushered forth an imaginative parade of horribles – a list of crimes for which, he argues, Ashenfelter could face prosecution.[7]  But arguments alone, lacking distinct factual underpinnings, do not present the kind of "concrete information," *id.*, that allow the court to analyze the legitimacy of the witness's claim of privilege.  *Id.* ("In *Hoffman*, however, the trial court had some concrete information to work with . . . the Court noted . . . that petitioner had a long police record and was widely recognized as a key member of an organized crime underworld.")  Therefore, the court finds itself outside a pure *Hoffman* analysis, because the fear of prosecution is not patently clear.  Rather, the court is faced with a situation closely analogous to that of *Morganroth*,[8] because the

---

[7] The list includes: (1) conspiracy and/or aiding/abetting a violation of the Privacy Act, (2) Suborning Perjury or Conspiring to Suborn Perjury, (3) violations of the Espionage Act under 18 U.S.C. §§ 793, 798, (4) Disclosure of Confidential Information pursuant to 18 U.S.C. § 1905, (5) Unauthorized removal and retention of classified documents or material under 18 U.S.C. § 1924, (6) Concealment, removal or mutilation generally, under 18 U.S.C. § 2071(a), and (7) Public money, property or record violations under 18 U.S.C. § 641.

[8] Ashenfelter's counsel, at the court's February 11 hearing, argued that *Morganroth* was limited to potential perjury prosecutions.  (Transcript of February 11, 2009 Hearing at 17, "The Sixth Circuit was pretty clear that *Morganroth* doesn't apply in a case where the Fifth is asserted on the basis of . . . [a] fear of a substantive prosecution.")  The *Morganroth* court, in framing the issue, did indeed recognize a risk-of-perjury orientation:  "[a]t issue is what sort of showing must be made by a witness to justify the invocation of the fifth amendment privilege when the only possible risk of prosecution which might flow from testimony in a subsequent proceeding is for perjury."  718 F.2d at 166.  That recognition, however, does not support counsel's sweeping conclusion that *Morganroth's* analysis simply "doesn't apply" in any other context.  That court's review subsequent to its introduction focused on and examined the unique situation in which a propounded question is not patently incriminating.  *Id.* at 169 ("Whether a witness risks a 'real danger' of prosecution from questions which appear on their face to call for only innocent answers and where the incriminating nature of the answer is not evident from the implications of the question in the setting in which it is asked, is a difficult question left unanswered by *Hoffman*.").  This court recognizes that the alleged possible prosecutions here are not limited to perjury.  The situation of this case is nonetheless analogous and the analysis provided by the *Morganroth* court is highly instructive in evaluating the contours of the Fifth Amendment.  In short, the court does not agree with Ashenfelter's counsel that

8

"questions [here] appear on their face to call for only innocent answers and . . . the incriminating nature of the answer is not evident from the implications of the question in the setting in which it is asked." *Id.* at 169.

While it is true that a witness claiming the protection against self-incrimination need not "prove the hazard in the sense in which a claim is usually required to be established in court," *Hoffman*, 341 U.S. at 486, "it is equally clear that a witness' [sic] 'say so' does not by itself establish the hazard of incrimination." *Morganroth*, 718 F.2d at 169 (citing *Hoffman*, 341 U.S. at 486). To move beyond "say so," the witness must provide sufficient evidence for the court to conclude the fear of prosecution is warranted. *Id.* This evidence must be personally supplied by the witness and may either come in the form of testimony or other evidence indicating the nature of the criminal charge for which he fears prosecution. *Id.* at 169-70. Without such stringent control over a witness's Fifth Amendment claim, "witnesses . . . will be the final arbiters of the validity of their asserted privileges," *id.* at 170, eviscerating a court's ability to discern a legally cogent claim among a raft of frivolous ones.

As discussed, Ashenfelter, as the witness seeking protection under the Fifth Amendment, has not yet provided personal testimony or other evidence which sufficiently indicates the nature of any criminal liability he may fear. The court has been presented with an abstract list of possible crimes which, without specific factual backing, provide little more than Ashenfelter's "say so" that a reasonable possibility of criminal prosecution exists. In light of the reasoning expressed herein, however, the court will

---

*Morganroth's* analysis is so tightly bound to fear-of-perjury circumstances as to require the court to ignore its lesson.

provide Ashenfelter a further opportunity to either provide the requested information or to properly develop the factual record so that this court may weigh his claim under the Fifth Amendment. To that end, the court will require Ashenfelter to re-appear for a deposition and either answer Plaintiff's questions or to be prepared to "supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of prosecution."[9] *Id.* at 169. The deposition shall take place at the Theodore Levin United States Courthouse at a time that the undersigned judge is readily available to review and decide disputed objections.

Because Ashenfelter will be given this further opportunity to clarify his claim of privilege, the court finds premature Plaintiff's motion to require Ashenfelter to show cause why he should not be held in contempt. The court will revisit this or a similar subsequently filed motion should future developments so indicate.

---

[9] The court does not intend to limit the possible ways in which Ashenfelter may provide such sufficient evidence. Plaintiff and Ashenfelter would do well to negotiate in good faith a solution acceptable to all concerned. This may result in a detailed affidavit prior to the deposition or ex parte *in camera* review of Ashenfelter's basis as to particular questions. In any event, the court anticipates that convening a deposition in the courthouse should significantly increase the speed at which any deposition issues can be resolved.

## IV.  CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff Richard Convertino's "Motion For An Order to Show Cause . . ." [Dkt. # 38] is DENIED without prejudice.

IT IS FURTHER ORDERED that the parties are DIRECTED to contact the court's staff on or before **March 6, 2009** and identify a time[10] to conduct Ashenfelter's deposition at the courthouse, while the undersigned judge is available.

                                                                    s/Robert H. Cleland
                                                                    ROBERT H. CLELAND
                                                                    UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 26, 2009, by electronic and/or ordinary mail.

                                                                    s/Lisa Ware for Lisa Wagner
                                                                    Case Manager and Deputy Clerk
                                                                    (313) 234-5522

---

[10] The court expects counsel to be able to agree. In the absence of agreement, the court will dictate a schedule.