UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD G. CONVERTINO<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*<br><br>        Defendants. | Case No. 07-CV-13842<br>Assigned to: Hon. Robert H. Cleland |

**PLAINTIFF RICHARD G. CONVERTINO'S REPLY TO NON-PARTY
DETROIT FREE PRESS' RESPONSE TO HIS SECOND RENEWED
MOTION TO COMPEL AND RESPONSE TO THE
DETROIT FREE PRESS' MOTION FOR A PROTECTIVE ORDER**

In response to Plaintiff Richard G. Convertino's Second Renewed Motion to Compel Production from the Detroit Free Press ("Free Press"), the Free Press has renewed its own motion for a protective order, claiming that Mr. Convertino's document requests were overbroad and burdensome. It further asserts that it should not be required to designate a corporate representative to answer Mr. Convertino's questions about David Ashenfelter's source(s) because Mr. Ashenfelter is the only employee of the Free Press who had that information.

As set forth below, the Free Press' arguments are without merit. All of the documents requested by Mr. Convertino are potentially relevant to his Privacy Act lawsuit, the Free Press has articulated no basis to conclude that the requested discovery is burdensome in any way, and Mr. Ashenfelter's invocation of the Fifth Amendment has no effect on the Free Press' obligation to designate a corporate representative and adequately prepare him to answer Mr. Convertino's questions. The Court should deny the Free Press' request for a protective order and compel it to

produce documents and designate a competent representative as set forth in Mr. Convertino's April 26, 2007 subpoena *duces tecum*.

I.  **THE REQUESTED DISCOVERY IS RELEVANT TO MR. CONVERTINO'S PRIVACY ACT LAWSUIT**

In opposing Mr. Convertino's subpoena and requesting a protective order, the Free Press argues that the requested discovery "seeks numerous documents not relevant to the one article at issue in the underlying Privacy Act case," and is thus overbroad and burdensome. *See* dkt. # 74 at 2. This argument misunderstands Mr. Convertino's Privacy Act suit. Mr. Convertino has sued the Department of Justice for knowingly leaking private information about him to Mr. Ashenfelter, which resulted in the publication of that information. It was the act of giving the private information to Mr. Ashenfelter, not his subsequent publication of it, that is at issue in Mr. Convertino's suit. As such, the scope of relevant information is anything that could help Mr. Convertino identify the circumstances leading to the leak, and those responsible, which is exactly the information he designed his subpoena to obtain.

Relevance is a broad standard that encompasses anything "reasonably calculated to lead to the discovery of admissible evidence." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 982 (6th Cir. 2003); *see also* Fed. R. Evid. 401 (defining "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence). "Relevant" information includes information related to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 341 (1978). In his subpoena, Mr. Convertino requested:

(1) All documents which directly or indirectly identify, discuss or reference any source of information related to Mr. Richard Convertino; (2) All documents directly or indirectly related to any newspaper stories you wrote about Mr. Convertino; (3) All documents which directly or indirectly identify any confidential source of information about Mr. Convertino. . . . This document request includes documents in either your possession or control.

All of the requested information could lead to significant admissible evidence. Documents related to sources that have provided information about Mr. Convertino, including but not limited to correspondence, memoranda, drafts of articles, and other such work product, could show who has provided Free Press reporters with information about Mr. Convertino in the past, which officials at the Detroit USAO had relationships with Mr. Ashenfelter or other reporters, which Detroit USAO officials Mr. Ashenfelter/other reporters contacted most often, which officials had previously provided information about Mr. Convertino to the Free Press, and other circumstantial evidence as to the source(s) of the leak.

Similarly, newspaper stories about Mr. Convertino (whether before or after the leak), would reveal which reporters have written articles about Mr. Convertino and which officials within the Department of Justice have spoken on the record to those reporters about Mr. Convertino. This information could allow Mr. Convertino to determine which officials had relationships with which members of the press, which officials had spoken about him on other occasions, what sort of information they revealed about him, and other information that could lead to circumstantial evidence as to the source of the leak. The requested documents could also lead to information that might impeach the testimony of witnesses already deposed by Mr. Convertino, or lead to other individuals who might have relevant information regarding Mr. Ashenfelter's source(s).

Moreover, as the Free Press has already demonstrated, it is fully capable of identifying responsive documents. The Free Press has identified 221 articles that appear responsive to his

3

request. Identifying further responsive documents, such as those related to the source(s) of those articles, is not unduly burdensome in comparison to Mr. Convertino's need for the information.

II. **THE FREE PRESS DOES NOT HAVE GROUNDS FOR A PROTECTIVE ORDER FROM MR. CONVERTINO'S SUBPOEAN *DUCE TECTUM***

The Free Press contends that it is entitled to a protective order because it believes Mr. Convertino's subpoena is unduly burdensome and barred by the First Amendment. These arguments are without merit. Mr. Convertino's need to obtain the requested discovery outweighs any burden suffered by the Free Press. *See Convertino v. DOJ*, No. 04-cv-00236 (D.D.C.), Dkt. # 196 at 12 (holding that "[t]o meet the Privacy Act's high standard for a showing of willfulness or intentionality, Convertino must know the leaker's identity.").

A. **Mr. Convertino's Subpoena is not Unduly Burdensome**

Under Fed. R. Civ. P. 26(c)(1), a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." To show good cause, a movant must articulate "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *William Beaumont Hosp. v. Medtronic, Inc.*, 09-CV-11941, 2010 WL 2534207, *4 (E.D. Mich. June 18, 2010) (quoting *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001)); *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987). The Free Press, however, has alleged no such facts.

The cases relied upon by the Free Press each detail the specific difficulties and costs that led the court to find that a discovery request was unduly burdensome and deserving of a protective order. For example, the Free Press cites to *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007), which concerned a protective order granted after the defendant had partially complied with the trial court's order to search 15 years of files for

4

incidents similar to the one that injured the plaintiff. *Id*. at 305. To demonstrate that the discovery was unduly burdensome, the defendant presented an affidavit stating that it had searched four years of files, which had required "approximately two weeks and 180 hours of manpower," and estimated that fully complying with discovery would take thousands of hours and $141,000. *Id*. at 306. Weighed against this burden, the court determined that the four years of records already produced were sufficient and entered a protective order as to the remaining years. *Id*. at 305-06. Similarly, in *Isaac v. Shell Oil Company*, 83 F.R.D. 428 (E.D. Mich. 1979), the defendant estimated that it would cost $50,000 to produce the ten years of documents requested by the plaintiff. *Id*. at 432. The court then found the discovery to be unduly burdensome and granted a protective order because the plaintiff had "not demonstrated a reasonable basis for his allegations that [the defendant] [was], in some way, liable to him," and thus had not established any need for the documents. *Id*.

    In short, the authority relied upon by the Free Press demonstrates that it has failed to meet its burden to articulate "specific facts showing clearly defined and serious injury' resulting from the discovery." It has put forth no facts specifying any particular difficulty with complying with Mr. Convertino's subpoena, nor has it attempted to estimate the cost of doing so. Instead, the Free Press has simply made the conclusory statement that Mr. Convertino's subpoena is unduly burdensome and cited cases where the court entered a protective order without so much as attempting to draw a connection between the relevant facts of those cases and its own situation.

    Finally, quite apart from the difficulty of manually searching through thousands of files that was found to be unduly burdensome in *Surles* and *Isaac*, the apparent ease with which the Free Press located 221 articles about Mr. Convertino belies its contention that complying with Mr. Convertino's subpoena would be unduly burdensome. Indeed, the effort required to comply

5

with Mr. Convertino's subpoena is likely de minimis compared to the time and cost of the five years that Mr. Ashenfelter and the Free Press have spent attempting to oppose it.

### B. The First Amendment does not Require the Court to Narrow Mr. Convertino's Subpoena

The Free Press selectively quotes this Court's August 28, 2008 Order and several foreign circuit cases in an attempt to resurrect its argument that the First Amendment protects it from discovery.[1] Dkt. # 111 at 8-9. This Court, however, held that the First Amendment does *not* protect the discovery in question. Dkt. # 27 at 18-20. Indeed, the Court found that the First Amendment interest of the press

> is minimized in this case, as the anonymous DOJ officials may well have violated federal law by communicating with Ashenfelter as to these matters. If the informants indeed violated the Privacy Act as Convertino alleges, potential sources of further similar violations *should* be deterred from interactions of this kind with representatives of the press. This is not an instance where the reporter's informant reveals hitherto unknown dangerous or illegal activities that, being unlikely otherwise to come to light, result in reporting that is obviously more weighty in a court's calculation of First Amendment safeguards. Rather, this situation is more akin to a reporter's observation of criminal conduct, from which the Supreme Court has explicitly stripped constitutional protection: "we cannot seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." *Branzburg*, 408 U.S. at 692.

*Id*. at 18-19 (emphasis in original). This Court spoke of making its order to disclose information sought by Mr. Convertino's subpoena "as narrow as possible," in the context of explaining that

---

[1] Each of the foreign cases cited by the Free Press concern analyses of a reporter's qualified First Amendment privilege. *See Gonzeles v. Nat'l Broadcasting Co., Inc.*, 194 F.3d 29, 35-36 (2d Cir. 1999); *Shoen v. Shoen*, 5 F.3d 1289, 1295-96 (9th Cir. 1993); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1335 (4th Cir. 1993); *United States v. La Rouche Campaign*, 841 F.2d 1176, 1178 (1st Cir. 1988); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980); *Lee v. DOJ*, 413 F.3d 53, 61-64 (D.C. Cir. 2005); *Blumenthal v. Drudge*, 186 F.R.D. 236, 244 n.12 (D.D.C. 1999). As this Court held, no such privilege exists in the Sixth Circuit, making the holdings and analysis of those cases irrelevant to this proceeding. Dkt. # 27 at 14.

Mr. Convertino's discovery on the Free Press was duplicative of his discovery on Mr. Ashenfelter – it made no comment about narrowing the *scope* of the subpoena, only about narrowing the parties that it would compel to respond to it. *Id.* at 21-22.

Mr. Convertino's subpoena is already as narrow as he dares to make it. The Free Press and Mr. Ashenfelter have repeatedly demonstrated throughout this litigation that they will take an aggressive and principled stand at every opportunity presented to them. While the Free Press' dedication to its principles is admirable, Mr. Convertino believes, with ample justification, that the Free Press will use any limitation or exception to the scope of his subpoena as an opportunity to withhold otherwise relevant evidence, leading to additional motions to compel and/or other litigation. To the extent that this Court finds that producing the requested discovery would implicate some First Amendment interest that is not outweighed by Mr. Convertino's need for the documents, that interest should be addressed by a protective order against public disclosure of the produced materials, not by a narrowing of the scope of the subpoena.

**III.  THE FREE PRESS MUST DESIGNATE AND PREPARE A REPRESENTATIVE**

The Free Press contends that, because Mr. Ashenfelter is allegedly its only past or present employee with direct or indirect knowledge of the identity of his source(s), and the Court has sustained Mr. Ashenfelter's Fifth Amendment privilege, that it is freed from designating a corporate representative as required by Rule 30(b)(6). Dkt # 111 at 12. This is not so.

All of the Free Press' arguments as to why it should not have to produce a competent representative concern only the first two topics listed on Mr. Convertino's subpoena: "(1) identify the names of all sources of information about Mr. Convertino to the Detroit Free Press referenced in the article entitled 'Terror Case Prosecutor is Probed on Conduct' that appeared in the January 17, 2004 edition of the Detroit Free Press" and "(2) identify the information each

7

such source provided to the Detroit Free Press." The Free Press raises no argument as to why it should not have to produce a competent representative to "(3) identify and provide testimony regarding the contents of all of the documents required to be produced herein." Dkt. # 1, Ex. 1, at 3. As the Free Press has admitted that it has responsive documents, it must at a minimum produce a representative who is competent to answer questions about those documents. Dkt # 111 at 5.

Furthermore, as explained in Mr. Convertino's Second Renewed Motion to Compel, the information that an entity's employees gather in the course of their employment is information that is known to the entity. *See Worthington Pump Corp. (U.S.A.) v. Hoffert Marine, Inc.*, 34 Fed. R. Serv. 2d 855 (D.N.J. 1982). While it may be true that individual employees may assert a Fifth Amendment privilege to avoid giving testimony that would incriminate them, the entity itself does not have that privilege and may risk sanctions if it fails to produce a representative who will give responsive answers at deposition. *Id*. The authority that the Free Press cites to the contrary is unavailing, as none deal with what happens to a corporation that has a knowledgeable employee that refuses to produce that information.

For example, the Free Press cites *Dravo v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995), but in that case the court ordered the plaintiff corporation to produce a competent 30(b)(6) witness, unless *none* of the plaintiff's employees possessed the requested information. Here, the Free Press has an employee who has the requested information. In *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192, 211-12 (D.R.I. 2008), the court denied a motion to compel because the discovery sought was documents protected by the attorney-client privilege. Here, the Free Press has no applicable privilege. Similarly, in *Lumbermens Mut. Casualty v. United States*, 70 Fed. Cl. 94, 97 (Fed. Cl. 2006), the court denied the plaintiff's motion to compel documents from the


United States on grounds that the United States could not locate the documents, rendering compliance impossible. Here the Free Press has already demonstrated its ability to locate responsive documents.

The Free Press is similarly incorrect when it asserts that it is not required to produce former employees or non-employees in the event that no current employee is able to testify. Dkt # 111 at 12-13, n. 4. The cases that the Free Press cites in support of its claim simply state that a Rule 30(b)(6) subpoena cannot compel a corporation to produce *specific* former employees, as those individuals must be subpoenaed individually under Rule 30(b)(1). *Severstal N. Am., Inc. v. N. Am. Refractories Co.*, No. 06-10202, 2008 U.S. Dist. LEXIS 107254, *5 (E.D. Mich. Dec. 15, 2008); Rundquist v. Vapiano SE, 277 F.R.D. 205, 210 (D.D.C. 2011). Mr. Convertino is not attempting to subpoena any particular witness, his subpoena simply requires the Free Press to designate and prepare an individual to give responsive answers on its behalf, which it is unquestionably obligated to do. *Dravo*, 164 F.R.D. at 75 ("If no current employee has sufficient knowledge to provide the requested information, the [corporation] is obligated to 'prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'").

When employees have relevant knowledge, but refuse to produce it on Fifth Amendment grounds, "the corporation is required to designate another agent who is capable of furnishing the information without incriminating himself." *Worthington Pump Corp. (U.S.A.) v. Hoffert Marine, Inc.*, 34 Fed. R. Serv. 2d 855 (D.N.J. 1982) (citing *United States v. Kordel*, 397 U.S. at 8, 9; *United States v. 3963 Bottles, more or less, etc.*, 265 F.2d at 336; *In re Anthracite Coal Antitrust Litigation*, 82 F.R.D. 364, 366 (M.D.Pa.1979); *Priebe v. World Venture, Inc.*, 407 F.Supp. 1244, 1246 (C.D.Cal.1976); Fed.R.Civ.P. 30(b)(6)). The court in *Worthington* then

went on to find that, "[t]he corporations' refusal to respond must be considered willful and deliberate since it resulted from a deliberate choice on the part of the corporate officers not to reveal the corporate information." *Id*.

## CONCLUSION

For the reasons stated above, the Court should deny the Free Press' motion for protective order and grant Mr. Convertino's motion to compel the Free Press to produce documents and designate a corporate representative pursuant to his subpoena *duces tecum*.

Respectfully submitted,

/s/ Erik D. Snyder

National Whistleblowers LDEF
3233 P Street, N.W.
Washington, DC 20007-2756
202-342-6980 phone
202-342-6984 fax

Attorney for Mr. Convertino

August 29, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2012, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system, which shall send notice to all counsel of record.

/s/ Erik D. Snyder

Erik D. Snyder
Attorney for Mr. Convertino