**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD G. CONVERTINO,

    Plaintiff,

v.                                         Case No. 07-13842

UNITED STATES DEPARTMENT OF JUSTICE,

    Defendant.
                                                                       /

**OPINION AND ORDER GRANTING PLAINTIFF'S SECOND RENEWED MOTION TO COMPEL AND DENYING NON-PARTY DETROIT FREE PRESS'S RENEWED MOTION FOR PROTECTIVE ORDER**

Plaintiff Richard Convertino has filed his second renewed motion to compel non-party Detroit Free Press to produce documents and designate a corporate representative for deposition. The Free Press opposes the motion and moves for a protective order. The issue has been fully briefed, and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will grant Plaintiff's motion.

### I. BACKGROUND

This motion concerns a long-standing third-party discovery dispute. In April 2007, Richard Convertino served the Detroit Free Press (the "Free Press") with a subpoena *duces tecum* requesting the Free Press to produce:

1. All documents which directly or indirectly identify, discuss or reference any source of information related to Mr. Richard Convertino;

2. All documents directly or indirectly related to any newspaper stories you wrote about Mr. Convertino.

3. All documents which directly or indirectly identify any confidential source of information about Mr. Convertino.

(Dkt. # 75-6.) The subpoena further seeks the Free Press to designate a corporate representative to be deposed and testify about the following:

1. identify the names of all sources of information about Mr. Convertino to the Detroit Free Press referenced in the article entitled "Terror Case Prosecutor is Probed on Conduct" that appeared in the January 17, 2004 edition of the Detroit Free Press;

2. identify the information each such source provided to the Detroit Free Press; and

3. identify and provide testimony regarding the contents of all of the documents required to be produced herein.

(*Id.*) Convertino served an identical subpoena on David Ashenfelter. Both Ashenfelter and the Free Press objected to the subpoenas, and Convertino moved to compel. In April 2008, the court granted the motion with respect to Ashenfelter but denied the motion without prejudice as to the Free Press because it was duplicative of the motion to compel Ashenfelter. (Order at 22, Dkt. # 27.) The court explained that "Convertino's best chance of learning the identity of Ashenfelter's sources is deposing Ashenfelter himself, and that an additional subpoena of the Free Press is unlikely to produce more information than that uncovered in a deposition of Ashenfelter." (*Id.*) The court noted that "[c]ontingent upon, for example, evidence of non-compliance with this order through impossibility, it may be appropriate to revisit the court's analysis as to the discovery obligations of the Free Press." (*Id.* at 22 n.17.)

In response to the order, Ashenfelter invoked the Fifth Amendment, upon which this court heard an expanded argument on a separate record *ex parte*, and upheld in April 2009. Convertino subsequently filed a renewed motion to compel discovery from the Free Press, and the Free Press simultaneously moved for a protective order. In

April 2011, the court ordered the case held in abeyance pending the result of Convertino's appeal to the D.C. Circuit of an order granting summary judgment in favor of the United States Department of Justice. The D.C. Circuit reversed that district court's decision in June 2012 and remanded the case for further proceedings. Upon Convertino's motion, this court lifted the abeyance, dismissed Convertino's renewed motion to compel, and directed Convertino to file a second renewed motion to compel. Convertino so moved, and the Free Press again opposed the motion and moved for a protective order.

## II. STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Even if the requested discovery is relevant, the court, on motion or of its own accord, must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). A party may move for a protective order when presented with a harmful discovery request. Fed. R. Civ. P. 26(c)(1). The court may issue a protective order, for good cause, to protect the party "from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

## III. DISCUSSION

### A. Are the requested documents relevant?

The Free Press claims that the subpoena requests documents irrelevant to Convertino's lawsuit. The federal discovery rules "are to be accorded a broad and liberal treatment." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). The term "relevant," for the purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "[D]iscovery is permissible where it 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 982 (6th Cir. 2003) (quoting Fed. R. Civ. P. 26(b)(1)).

Convertino has sued the Department of Justice for informally disclosing—leaking—protected private information about Convertino to Ashenfelter in violation of the Privacy Act, 5 U.S.C. § 552a. Convertino cannot succeed on his Privacy Act claim without identifying Ashenfelter's source. This court has previously held that the identities of Ashenfelter's sources "are undoubtedly relevant under Rule 26(b)(1)." (Order at 16, Dkt. # 27.) The subpoena requests documents that: (1) reference any source of information related to Convertino; (2) are related to any newspaper stories written about Convertino; and (3) identify any confidential source of information about Convertino. These documents could provide Convertino with direct or circumstantial evidence regarding which Free Press reporters had information about Convertino and with which Department of Justice employees or officials such reporters had a

relationship. The requested documents are unquestionably relevant for the purposes of discovery.

### B. Is the subpoena unduly burdensome?

The Free Press argues that Convertino's subpoena is unduly burdensome. The subpoena requests the Free Press to produce "[a]ll documents which directly or indirectly identify, discuss or reference any source of information related to Mr. Richard Convertino." (Dkt. # 75-6.) The Free Press claims the request imposes an undue burden because Convertino worked as an Assistant United States Attorney in Detroit for many years and was frequently reported on by the Free Press.

"The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). In order to establish good cause, the movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). The Free Press does not provide any specific facts showing how it will suffer serious injury from complying with the subpoena. Instead, it simply asserts that the subpoena is overbroad and imposes an undue burden "because the Free Press is not a party in the underlying litigation." (Resp. at 10, Dkt. # 111.) By offering only conclusory statements, the Free Press has not shown that Convertino's subpoena is unduly burdensome.

### C. Does the subpoena violate the First Amendment?

The Free Press claims that providing Convertino with all of its documents that relate to him would violate the First Amendment because the documents "may identify other confidential sources unrelated" to Convertino's case, as well as non-confidential sources of information. (Resp. at 12, Dkt. # 111.) As Convertino's requests implicate the First Amendment, the Free Press argues, the subpoena should be narrowed.

The court considered the risk to First Amendment interests when ruling on Convertino's original motions to compel Ashenfelter and the Free Press. The court explained:

> Virtually every case in which a court compels a reporter to disclose a confidential source implicates at least some risk, direct or otherwise, that news gathering activities protected by the First Amendment may be hindered. . . . However, this generalized danger is minimized in this case, as the anonymous DOJ officials may well have violated federal law by communicating with Ashenfelter as to these matters. If the informants indeed violated the Privacy Act as Convertino alleges, potential sources of further similar violations *should* be deterred from interactions of this kind with representatives of the press.

(Order at 18-19, Dkt. # 27.) The court granted the motion to compel Ashenfelter after finding that the burden on Ashenfelter's First Amendment interests was "minimal" and "overbalanced by Convertino's countervailing interests." (*Id.* at 19-20.)

The court then determined whether to grant the motion to compel the Free Press and held that "an order to disclose should be as narrow as possible" given "the potential adverse effects on news gathering activities." (*Id.* at 22.) In denying the motion to compel the Free Press, the court concluded that "Convertino's best chance of learning the identity of Ashenfelter's sources is deposing Ashenfelter himself and that an additional subpoena of the Free Press is unlikely to produce more information than that

uncovered in a deposition of Ashenfelter." (*Id.*) The court, therefore, did not narrow the scope of the subpoena but only which parties were compelled to respond to it. As Ashenfelter has justifiably invoked the Fifth Amendment, Convertino may not depose him. The Free Press is now Convertino's best, and perhaps only, opportunity to learn the identify of Ashenfelter's sources. The few First Amendment interests at stake are insufficiently identified to weigh significantly in favor of granting the Free Press a protective order.

### D. Are the requested documents within the control of the Free Press?

The Free Press must provide Convertino with the requested documents that are in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). Documents are within a party's "possession, custody, or control," for the purposes of Rule 34, "if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). Courts often find that "employers have control over their employees and can be required to produce documents in their employees' possession." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448-49 (S.D. N.Y. 2011) (collecting authority). The Free Press objects to providing documents that it claims are solely within Ashenfelter's possession, asserting that it has no legal right to such documents. Convertino disputes this point.

Both parties maintain that *Hatfill v. New York Times Company*, 242 F.R.D. 353 (E.D. Va. 2006), supports these competing positions. In that case, the court considered whether a newspaper corporation, for the purposes of Rule 34, had a legal right to obtain its reporter's notes. *Id.* at 355. The court held that the corporation had ceded any legal rights to its reporters' notes because the corporation had explicitly so stated in

7

both a collective bargaining agreement with the reporters' union and the corporation's "Records Retention Policy." *Id.* But, unlike the corporation in *Hatfill*, the Free Press has not produced a collective bargaining agreement or official company policy here that states or even implies that the Free Press has relinquished any rights to its reporters' documents. The Free Press claims that, "[i]n effect, notes are materials created by and belonging to the reporter, to be maintained or discarded at his discretion." (Resp. at 14, Dkt. # 111.) But the only evidence the Free Press offers in support of this sentiment is its employee guidelines which state, "It is our general practice not to save reporters' notes. . . . [S]torage space is limited and[] generally what we publish speaks for itself." (Pl.'s Mot. Ex. B at 2, Dkt. # 110-2.) This policy may indicate that the Free Press discards its reporters' notes, but does not show that the Free Press has relinquished its legal rights to those documents—indeed, it would seem that claiming the right to dispose of something proves quite the contrary. The court concludes that the Free Press maintains the legal right, under Rule 34, to demand and obtain documents from its reporters.

**E. Must the Free Press designate a corporate representative for deposition?**

Finally, the Free Press argues that Convertino's motion to compel a corporate deposition is futile. Under Rule 30(b)(6), a corporation "has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf." *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (citations omitted). "If no current employee has sufficient knowledge to provide the requested information, the party is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on

behalf of the corporation." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb., 1995) (citations omitted).

>The subpoena requests the Free Press to produce a witness who can:
>
>1. identify the names of all sources of information about Mr. Convertino to the Detroit Free Press referenced in the article entitled "Terror Case Prosecutor is Probed on Conduct" that appeared in the January 17, 2004 edition of the Detroit Free Press;
>
>2. identify the information each such source provided to the Detroit Free Press; and
>
>3. identify and provide testimony regarding the contents of all of the documents required to be produced herein.

(Dkt. # 75-6.) The Free Press does not contest that it can produce a witness who can testify about the contents of the documents requested in the subpoena. However, the Free Press claims that Ashenfelter is the only individual who knows the name of the source for the January 2004 article. Individuals who invoke the Fifth Amendment retain that right when they are deposed as corporate representatives. *Martinez v. Majestic Farms*, No. 05-60833-CIV, 2008 WL 239164, at *2 (S.D. Fla. Jan. 28, 2008). Ashenfelter has invoked the Fifth Amendment and cannot serve as the representative for that purpose. The Free Press maintains that because there is no other current or former employee who knows the source of the January 2004 article, it cannot prepare an alternate witness to testify for a deposition and has no further obligation under Rule 30(b)(6). Convertino calls into doubt the truth of this assertion, arguing that an editor or co-employee of Ashenfelter must have been informed of the confidential source upon publishing the January 2004 article.

"The burden is on a corporation seeking to avoid compliance on the basis that the information sought is not known or reasonable knowable to move for and justify a protective order." *Kanaji v. Pa. Child Guidance Ctr. of Children's Hosp.*, No. CIV. A. 00-937, 2001 WL 708898, at *2 (E.D. Pa. June 20, 2001). Without further information, the court is unable to determine whether there is, in fact, a current or former employee of the Free Press with knowledge of Ashenfelter's source. But even if no such individual exists, the court will require the Free Press to produce a corporate representative to testify to that effect in a deposition. When opposing the designation of a Rule 30(b)(6) witness, "claimed lack of knowledge is generally not sufficient for a protective order as the other side may test this claim by deposing the witness." *Kanaji*, 2001 WL 708898, at *2. Identifying Ashenfelter's source is critical to Convertino's case, and deposing a corporate representative of the Free Press is an important tool for uncovering that source. The Free Press must prepare a corporate representative pursuant to Rule 30(b)(6).

As Ashenfelter cannot be compelled to testify as a Rule 30(b)(6) representative, he is also precluded from assisting in the preparation of another representative, *Martinez*, 2008 WL 239164, at *3, or impeding the process. At the deposition, Convertino may inquire as to what steps were used to locate and prepare a Rule 30(b)(6) witness. Any question of sanctions upon the Free Press for failing to comply with its discovery obligations is reserved for another day.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's second renewed motion to compel non-party Detroit Free Press [Dkt. # 110] is GRANTED. The Detroit Free Press is ORDERED to produce the documents requested in Plaintiff's subpoena by **January 29, 2013**. The Free Press is also ORDERED to designate a Rule 30(b)(6) witness who can testify at deposition regarding the topics outlined in Plaintiff's subpoena by **January 29, 2013**. The court expects such deposition of the Rule 30(b)(6) witness to be organized and completed by **February 12, 2013**.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 15, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 15, 2013, by electronic and/or ordinary mail.

  s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522